## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

CHARLES H. WEISE,                    )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          CIVIL ACTION NO. 1:08-0271
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
          Defendant.                 )

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security

denying the Claimant's application for disability insurance benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433. This case was referred to the undersigned United States

Magistrate Judge by Standing Order filed April 22, 2008, to consider the pleadings and evidence,

and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28

U.S.C. § 636(b)(1)(B). (Document No. 3.) Presently pending before the Court is Plaintiff's Motion

for Summary Judgment (Document No. 8.) and Defendant's Motion for Judgment on the Pleadings.

(Document No. 9.)

The Plaintiff, Charles H. Weise (hereinafter referred to as "Claimant"), filed an application

for DIB on May 2, 2006, alleging disability as of May 1, 2006, due to a bulging disc at L5, diabetes,

hyperlipidemia, and loss of hearing. (Tr. at 19, 58, 61, 73-75, 83.) The claim was denied initially and

upon reconsideration. (Tr. at 52-53, 58-60, 61-63.) On November 1, 2006, Claimant requested a

hearing before an Administrative Law Judge ("ALJ"). (Tr. at 54.) A hearing was held on May 17,

2007, before the Honorable Steven A. DeMonbreum. (Tr. at 276-334.) On June 27, 2007, the ALJ

issued a decision denying Claimant's claim for benefits. (Tr. at 19-30.) The ALJ's decision became the final decision of the Commissioner on February 28, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 5-9.) On April 22, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth

and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the

degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, May 1, 2006. (Tr. at 24, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from degenerative disc disease, degenerative joint disease, obesity, chronic obstructive pulmonary disease ("COPD"), mild hearing loss, and diabetes, which were severe impairments. (Tr. at 24, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or medically equal the level of severity of any listing in Appendix 1. (Tr. at 25, Finding No. 3.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [T]he claimant has the residual functional capacity to lift up to fifty pounds occasionally and twenty-five pounds frequently; can sit/stand/walk up to six hours each in an eight hour day; and can occasionally crawl; and climb ladders, ropes, or scaffolds. Additionally, he should avoid concentrated exposure to cold, noise, vibration, fumes, odors, gases, poor ventilation, and hazards.

(Tr. at 26, Finding No. 4.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 28, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE")

5

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a grounds keeper, farm worker, laundry worker, stock clerk, and retail bagger, at the medium level of exertion. (Tr. at 28-29 Finding No. 9.) On this basis, benefits were denied. (Tr. at 29, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on March 30, 1951, and was 56 years old at the time of the administrative hearing, May 17, 2007. (Tr. at 73, 282.) Claimant has an eighth grade, or limited education and is able to communicate in English. (Tr. at 24, Finding No. 7; 32, 87.) In the past, he worked as a long wall shearer operator and scoop operator. (Tr. at 84, 105-06, 318.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in evaluating Claimant's mental impairments and associated limitations. (Document No. 8 at 9.) Specifically, Claimant asserts that the ALJ erred in determining that Claimant did not suffer from severe mental impairments and in failing to consider the effects of Claimant's mental impairments on his ability to work. (Id.) He further asserts that the ALJ erred in failing to order a consultative psychological or psychiatric examination. (Id. at 12.) The Commissioner asserts that these arguments are without merit and that the ALJ's decision is supported by substantial evidence. (Document No. 9 at 9-17.)

1. Severe Mental Impairment.

Claimant first alleges that the ALJ erred in failing to find that he had a severe mental impairment. (Document No. 8 at 9.) In support of his allegation, Claimant notes Dr. Ahmad's medical records, which reflect that he was distressed because of his pain syndrome, and that he was prescribed Cymbalta and Effexor. (Id. at 10.) He further notes the May 22, 2007, consultative psychological evaluation by Licensed Psychologist Teresa E. Jarrell, M.A., and the accompanying Medical Assessment of Ability to Do Work-Related Activities (Mental). (Id. at 10-12.)

The Commissioner asserts that substantial evidence supports the ALJ's step two finding in at least three regards. (Document No. 9 at 9-12.) First, the ALJ stressed in his opinion that Claimant did not claim that a mental impairment contributed to his alleged disability in his DIB application.

(Id. at 10.) Second, Claimant neither sought any mental health treatment during the relevant period of time, nor was referred by his treating physicians to a mental health provider. (Id.) Third, although Claimant was prescribed antidepressants, Cymbalta and Effexor, his physicians never diagnosed anxiety or depression, or recommended that Claimant have a mental health evaluation. (Id.) Moreover, according to Claimant's testimony, Dr. Ahmad prescribed the antidepressants to treat Claimant's chronic back and muscle pains. (Id.)

Regarding Ms. Jarrell's consultative psychological evaluation, the Commissioner asserts that the ALJ properly pointed out the inconsistencies in her records. (Document No. 9 at 10-11.) Specifically, the ALJ noted that though Ms. Jarrell assessed a GAF of 55, which corresponded to only moderate symptoms, she indicated on her form assessment that Claimant's limitations were so serious as to preclude even simple, repetitive work. (Id.) Consequently, the ALJ was not able to rely on Ms. Jarrell's inconsistent report. (Id. at 10.) The Commissioner further asserts that Ms. Jarrell's records were inconsistent with the other medical evidence of record, which demonstrated that Claimant did not require mental health treatment, or complained of anxiety or depression. (Id.) Thus, the Commissioner contends that the ALJ properly found that Claimant's mental impairments were non-severe in nature. (Id.) Moreover, the Commissioner asserts that the ALJ's decision is supported by substantial evidence because Claimant failed to demonstrate that any mental impairment would meet the durational requirement of the Social Security Act. (Id.) The Commissioner, therefore, asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Id.)

To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work

activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2007). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

The medical evidence pertaining to the relevant period of time, from May 1, 2006, through June 27, 2007, reflects that on August 8, 2006, Claimant complained to Dr. Syed M. Ahmad, M.D., that he was fatigued and experienced sleep disturbance. (Tr. at 217.) He denied, however, any anxiety or depression. (Tr. at 218.) The remainder of Claimant's complaints were physical in nature. (Id.) Dr. Ahmad prescribed Cymbalta 30mg daily for seven days, to be followed by 30mg twice a day, as well as Ultram 50mg on an as needed basis. (Tr. at 219.) Progress notes from August 29, 2006, indicated Dr. Ahmad's direction that Claimant continue Cymbalta, and that on November 29, 2006, the Cymbalta was switched to Effexor because Claimant's insurance would not pay for the Cymbalta. (Tr. at 231-32.) On February 28, 2007, Dr. Ahmad noted that Claimant's mood had

improved on Effexor 75mg, but that he was not sleeping well and was taking samples of Ambien. (Tr. at 230.) The remainder of the medical evidence submitted prior to the administrative hearing is devoid of any reference to any complaints or treatment related to a mental condition.

At the administrative hearing on May 17, 2007, Claimant's counsel requested that Claimant undergo a consultative mental evaluation based on Dr. Ahmad's prescribing Cymbalta and Effexor. (Tr. at 280.) The ALJ, however, denied the request, noting that there were no diagnoses of depression, anxiety, or other mental disorder, and that antidepressants were used in conjunction with pain medications to enhance their effect. (Tr. at 280-81.) Claimant confirmed the ALJ's statements when he testified that Dr. Ahmad prescribed Effexor for chronic back and muscle pain. (Tr. at 303.) Claimant testified that he quit school in the ninth grade because he lost interest, and that he had been retained in the fourth grade, but attended regular classes. (Tr. at 282-84.) He took an early retirement in May, 2006, due to physical impairments. (Tr. at 284.) Claimant testified that the physical pain caused sleep difficulty, for which he tried Ambien but that it did not help. (Tr. at 294.) His sleep pattern however, was restricted while he was working. (Tr. at 296.) He testified that the physical pain also caused memory problems, though he had no problems focusing or concentrating. (Tr. at 310-11.) Regarding activities, Claimant testified that he watched television, shopped with his wife, drove five miles to pick up his granddaughter from school, and performed educational and homework activities with his granddaughter, though he did not understand all aspects of the activities. (Tr. at 292, 298-302, 308.) He further testified that he walked around his house and to his neighbor's house, did some bank fishing, did crossword puzzles, went to dinner with his wife, and read newspapers and magazines. (Tr. at 304-08.)

Following the administrative hearing, Teresa E. Jarrell, M.A., a licensed psychologist,

conducted a psychological evaluation at Claimant's attorney's request, for the purposes of obtaining information regarding Claimant's emotional and behavioral functioning. (Tr. at 245-53.) Claimant reported symptoms of depression and anxiety and problems with his memory, noting problems remembering names and things that occurred during the course of the day. (Tr. at 246.) Claimant had never been treated by a psychiatrist or psychologist, though he reported the onset of symptoms of depression and anxiety was prior to his retirement. (Id.) Claimant reported his activities to have included folding laundry, carrying out trash and transporting it to a nearby dump, watching television, reading newspapers and magazines, shopping occasionally, talking to his children daily, receiving visits from his children weekly, and visiting with his neighbors occasionally. (Tr. at 247.)

Ms. Jarrell noted on mental status examination that Claimant presented with a mildly anxious and mildly depressed mood; a restricted affect; generally linear, but slow thought process; thoughts of suicide, but no specific intent; full orientation; normal immediate memory; mildly deficient recent memory; moderately deficient remote memory; mildly deficient insight, judgment, and concentration; normal capacity for mathematical reasoning; and a serious and motivated attitude. (Tr. at 248.) Ms. Jarrell diagnosed major depressive disorder, single episode, severe, without psychotic features; generalized anxiety disorder; pain disorder associated with both psychological factors and a general medical condition; personality disorder, not otherwise specified; and a GAF of 55.[2] (Tr. at 252.) Ms. Jarrell opined that the severity of Claimant's depression and anxiety would interfere with his ability to understand, remember, and carry out instructions, detailed or complex;

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

maintain concentration, persistence, or pace for extended periods of time; consistently and repetitively carry out even simple tasks; relate appropriately to supervisors, co-workers, and the general public; exhibit reliability; and tolerate stress, to the point that he would decompensate under stress. (Tr. at 252-53.) Ms. Jarrell therefore, opined that Claimant's prognosis to resume sustained competitive gainful employment was poor. (Tr. at 253.)

On May 27, 2007, Ms. Jarrell completed a form Medical Assessment of Ability to Do Work-Related Activities (Mental), on which she opined that Claimant retained only fair ability to perform the following activities: follow work rules, relate to co-workers, deal with public, use judgment with public, interact with supervisors, function independently, relate predictably in social situations, demonstrate reliability, and understand, remember, and carry out simple job instructions. (Tr. at 243-44.) She further opined that Claimant's ability to perform the following activities was poor or none: deal with work stresses, maintain attention and concentration, demonstrate reliability, and understand, remember, and carry out complex or detailed job instructions. (Id.)

In his decision, the ALJ summarized the medical evidence of record and noted that prior to Ms. Jarrell's psychological evaluation, Claimant neither had undergone any treatment or alleged any mental impairment. (Tr. at 25, 27.) As evidenced above, Claimant denied anxiety and depression to Dr. Ahmad in 2006, though Dr. Ahmad reported an improved mood in February, 2007. (Tr. at 218, 230.) Furthermore, Claimant did not allege in his application any impairment related to a mental condition. (Tr. at 83.) Despite having been prescribed antidepressants by his treating physician, Claimant testified that they were prescribed to treat his chronic back and muscle pain. The only evidence of record indicating any mental impairment, was Ms. Jarrell's consultative psychological evaluation and assessment. The ALJ considered Ms. Jarrell's evaluation and assessment, but gave

12

them little weight because they were inconsistent with Claimant's daily activities and the objective medical evidence. (Tr. at 27.) The ALJ noted Claimant's activities to include reading, watching movies, doing crossword puzzles, and driving. (Id.) These activities required good concentration, which was inconsistent with Ms. Jarrell's assessment of poor concentration and attention. (Tr. at 244.) Though Ms. Jarrell was the only psychologist of record to render an assessment as to Claimant's mental capabilities, the ALJ found that her opinions were inconsistent with the other substantial medical evidence of record. As discussed above, the other medical evidence of record primarily reflected complaints and treatment of a physical nature, and indicated that Claimant denied anxiety and depression until examined by Ms. Jarrell one month prior to the ALJ's decision. The ALJ also found that Ms. Jarrell's opinions were internally inconsistent. (Tr. at 25.) As stated above, Ms. Jarrell assessed a GAF of 55, which was indicative of only moderate limitations in functioning. (Tr. at 252.) Nevertheless, as further stated above, she also assessed poor or "marked" limitations, which would preclude any employment, and which were inconsistent with an assessment of only moderate limitations in functioning. (Tr. at 243-44.) Due to the inconsistencies within Ms. Jarrell's opinion and with the other substantial evidence of record, the ALJ was entitled to give little weight to Ms. Jarrell's opinions.[3] Consequently, the undersigned finds that the ALJ's step two finding that

---

[3] At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2006). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and

Claimant does not have a severe mental impairment is supported by substantial evidence of record.

Contrary to Claimant's argument, the ALJ did not substitute his opinion for that of Ms. Jarrell's. (Document No. 8 at 12-13.) To the extent that Ms. Jarrell's opinion is the only psychological opinion of record, the opinion is uncontradicted. However, the opinion was rendered one month prior to the issuance of the ALJ's decision and clearly was contradictory to and inconsistent with the other substantial evidence of record that did not suggest any severe mental impairment. The ALJ properly considered all the evidence of record and explained his reasons for rejecting Ms. Jarrell's opinion. The absence of another psychological opinion did not prohibit the ALJ from rejecting Ms. Jarrell's unsupported opinion.

---

mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.* §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2006). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. *Id.* §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In addition to finding that Claimant's mental impairments were non-severe, the ALJ determined that Claimant failed to establish that his mental impairments met the durational requirement of 20 C.F.R. § 404.1509. (Tr. at 25.) See 20 C.F.R. § 404.1509 (2007) (A severe medically determinable mental impairment "must have lasted or must be expected to last for a continuous period of at least 12 months."). The period of time relevant to this disability determination is from May 1, 2006, through June 27, 2007. Despite Claimant having admitted that he took Cymbalta and Effexor to treat his chronic back and muscle pain, the medical evidence reveals that he first was prescribed Cymbalta on August 8, 2006. (Tr. at 219.) The evidence further reveals that Claimant did not undergo his consultative psychological evaluation with Ms. Jarrell until May 22, 2007, which was only one month prior to the end of the relevant period. (Tr. at 245-53.) Pursuant to § 404.1509, therefore, Claimant's alleged mental impairment does not meet the durational requirement for severity.

2. Duty to Develop the Record.

Claimant next alleges that the ALJ erred in not ordering a consultative psychiatric or psychological examination. (Document No. 8 at 12.) The Commissioner asserts that Claimant's claim is without merit. (Document No. 9 at 12.) The Court finds Claimant's argument on this point unavailing. Although an ALJ does have a responsibility to help develop the evidence, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 404.1512(a) (2007).[4]  Thus, Claimant is responsible for providing medical evidence to the Commissioner

---

[4] In Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id.  The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met

showing that he has an impairment.  Id. § 404.1512(c). Although the ALJ has a duty to develop the record fully and fairly, he is not required to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that Claimant has been represented by counsel in this case throughout the proceedings.

Additionally, Claimant had several opportunities to submit additional evidence at the initial and reconsideration stages of his application, and when requesting a hearing before the ALJ. Counsel submitted a psychological evaluation post-hearing. Nevertheless, the ALJ indicated at the

---

the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. *Id.*

It is nevertheless Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2006) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that he has an impairment. *Id.* §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." §§ 404.1512 (c); 416.912(c)(2006).  In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary.  . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

*Bowen v. Yuckert*, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits.  *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

16

administrative hearing that he would review the evidence and testimony to determine whether a consultative psychological or psychiatric examination was warranted. At the conclusion of the hearing, however, he decided that such examination was not warranted. As discussed above, and as pointed out by the Commissioner, the evidence indicated that Claimant did not allege a mental impairment in his application, or seek any mental health treatment during the relevant period. The ALJ adequately explained that Claimant's treating physician, Dr. Ahmad, did not diagnose a mental impairment or prescribe antidepressants to treat a mental impairment. Claimant never complained of any mental impairment and even denied experiencing depression or anxiety. He testified that despite taking antidepressants, they were prescribed to treat chronic back and muscle pain, and that his pain was the precipitating factor for his taking early retirement.

In the absence of Claimant's identification of further evidence of a mental impairment, the Court finds that the ALJ did not breach his "duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000). The evidence of record regarding Claimant's conditions was sufficient from which the ALJ could determine that Claimant did not have any limitations resulting from a severe mental impairment. As such, the ALJ did not err in failing to obtain a consultative psychological or psychiatric examination.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the District Court confirm and accept the foregoing findings, **DENY** Plaintiff's Motion for Summary Judgment (Document No. 8.), **GRANT** the Commissioner's Motion for Judgment on the Pleadings (Document No. 9.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

17

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).  Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: July 31, 2009.

R. Clarke VanDervort
United States Magistrate Judge

18